Turn to the next case on our calendar. Brian Doty v. Tappan Zee Constructors. Good morning, counsel. Good to see you both. Good morning. You may proceed. Appellant may proceed. Thank you, your honors. Paul Hoffman of Hoffman & Schweitzer on behalf of Brian Doty. Your honors, what I would suggest here is a classic case of a construction worker who clearly fits all of the definitions from the Chandra's decision and the other Supreme Court decisions to make him a qualified seaman in this situation. Those tests start with the question of whether a vessel-related employment was clear. Did Mr. Doty work on a fleet of vessels? That is clear. It is not contested. Did his work contribute to the mission or the function of those vessels? Again, there is no dispute that the work he did did so. Did he have a temporal component sufficient to meet the 30% bottom line that the Supreme Court has said or suggested must be proven? Yes. Mr. Doty worked at least 90% of his time on these vessels, this fleet of vessels. Did he work in navigation? Absolutely. These vessels that he worked on traveled along a three river and performed the mission of building the bridge, but his work was specifically focused on making the vessels and their appurtenances be able to perform that mission and accomplish that function. The last is, did the work need to be done on a routine basis? Of course, it needed to be done. He carried materials and equipment to the vessels on a routine basis as many as seven to eight times a day, carrying 60 to 70 pounds of materials and equipment from the materials barge and the work barge to the various locations where he performed his function. He worked on both the tugboats to repair them on occasion. He worked on the crane barges. He worked on all of the vessels so that they could accomplish their mission. Now, the court below rejected Mr. Doty's arguments that he was a seaman, relying on the this court's Buchanan Marine decision. Clearly, the two cases are absolutely distinguishable, whereas in Buchanan Marine, Mr. Vogt was focusing his work on the loading of the barges at the Tilcon facility. All of those barges were tied up in the marina to either the north or the south dock. Here, you have a situation where Mr. Doty was out in the from a navigation standpoint. Counsel, excuse me if I may interrupt. Yes. The crucial language, I think, in matter of Buchanan Marine is that none of his work, the court said, was of a seagoing nature. He was not exposed to the perils of the sea in the manner associated with seaman status. I think that would apply to Mr. Doty as well. Well, I cannot disagree, Your Honor. You have a situation here where Mr. Doty was not in vessels that were tied up and moored in a safe marina where the worker could walk on and off the vessel onto the piers. Here, you had Mr. Doty out in the middle of a three-mile long location on the busy Hudson River with some 6,000 to 8,000 vessels passing under that bridge, per the evidence in the record. You have him subject to the tides and winds that you have out there. You have the waves that are clearly different in the middle of the Hudson River than they are when it's sitting alongside a safe marina. Mr. Hoffman, and I don't mean to minimize the dangers at all faced potentially by your client or anyone else on these barges in the middle of the Hudson, but let's say that we were talking about a very fancy McDonald's restaurant that was in the middle of the Hudson, and it was just sort of this new concept, and that's where Mr. Doty was working and he was injured. Would that… As a server of hamburgers, Judge? Yes. It's clearly very… With all due respect, that's not a very good analogy because Mr. Doty… Go with my bad analogy. Here it is. Mr. Doty was repairing vessels and their appurtenances so that vessels can accomplish a mission. If the McDonald's maybe was floating on a barge, that might be a different issue, but here… Why is that? The crux of it is not the location, really. It's that he's got to be working on a vessel. He's got to be contributing to the work of a vessel. Is that correct? Yes, Your Honor. I guess maybe if it's a floating McDonald's, maybe the work of the vessel could be making hamburgers and serving them. That's really not what we have here. We have a man who's… The crane on this barge, which was absolutely necessary to build this bridge, it's a specialized crane, it's a ringer, was down and they couldn't do the work. They couldn't accomplish their mission at that time. Mr. Doty is sent with his tools and his materials from the materials barge and sent out there to get this crane to work to be able to… He's really performing mechanical work on the cranes, not the barge. Thank you very much. He's doing… But there's no distinction under the Jerome Grubart versus Great Lakes case. The appurtenances of the vessel are the same as the vessel. And that was clear in that case where that derived from when the pile-driving barge drove a beam down into the railroad tunnel under Chicago and flooded it. And the Supreme Court held that that was a maritime case and that the appurtenance in that case, the crane, was part of the vessel. And that's why the limitation proceeding was allowed to proceed. And that's the same thing we have here. Mr. Doty was involved in the equipment on the barge so that it could perform its function. It's the same as an engineer that would be in the engine room of a ship, Judge, that that engineer has to keep that engine running so that the ship can do its work. And Mr. Doty was doing the same. Can I just ask you… I'm sorry, Judge Lohier. Go ahead. Isn't this really come down to the test, which is a totality of the circumstances test, right? I mean, we can debate any one of these individual factors, and it may be that you have a strong argument about one factor or another. I mean, I don't think the other side, or maybe they are, is contesting and saying, well, you've got nothing here. I mean, obviously, your client was working in the Hudson River, right? It's not like he was in, you know, on land in Poughkeepsie or something. Right. But just because he's working on the river, and even if he has some factors in his favor, you would agree we still have to look at the totality of the circumstances, correct? I will agree. That's the Supreme Court's teachings to us. And I just want to, if I may comment, the totality completely points to him being a seaman. And it's not just an opinion. It's the fact that he did 90 percent of his work doing that work. And the Supreme Court in the harbor, but he transported his tools and materials to the birch barge upon which he fell. And the Supreme Court said this is clearly a question of fact for a jury. And I don't even think in this case that it's a question of fact for the jury. I think that your honors can direct that this is a case of a seaman. But and we can get to point two is in case you say, well, it's a jury question. But the point is all of his work compared to what Mr. Volk was doing, all of Mr. Doty's work was focused upon making those vessels be able to perform their function. Whereas Mr. Volk in the Buchanan case was focusing on the loading, the long shoring of the work that was being done at that site and in the safe harbor. Counsel, wasn't his work connected to building the bridge? Isn't that the ultimate work that they were doing? Well, ultimately, yes, that was the mission of the vessels. But Mr. Doty wasn't building the bridge. Mr. Doty was fixing the machinery that could be used to do it. So that's why he's an engineer. That's why his job, let's face it, any vessel that has to do work ultimately has a purpose to do something, whether it be transporting cargo. You could say that the ship's engineer using what I think you're trying to analogize, you could say that the ship's engineer was really just doing long shoring because he's helping move the vessel by his doing bridge building because he was fixing the machines that had to do the work. He's fixing the cranes. Yes, sir. He's fixing the cranes that are necessary for the bridge building. That's right. And not just the cranes. 90 percent of his work was on the vessels, whether it be fixing a crane, whether it be pumping out the vessel, whether it be changing oil filters, whether it be handling the spuds, all of these different things. At times, he actually operated the crane, as the testimony shows. So his work was focused on the vessel, whereas, again, his work was focused on the loading of that cargo in the safe waters. So you've got the two distinctions, not in safe waters, out in the open sea. And we point out all of the deaths that occurred during this project and also that his work was directed solely to the function of those vessels so they could accomplish their mission. Completely different from what we have in Mr. Vogt. Counsel, you've reserved two minutes for rebuttal. Oh, thank you, sir. Judge, I did reserve two. Yes. Thank you. We'll hear from the appellee. Counsel. Good morning, Your Honors, and may it please the court. I think Judge Nardini hit on an important point here, which is there is a totality of the circumstances that must be considered. The test is a multi-factor test. And to give it some context, the reason why one prong of the test talks about the serving the function of the vessel or contributing to the function of the vessel and the accomplishment of its mission is because when the Supreme Court considered the Wielander case in 1991, there they were considering the question of whether somebody who does sail on a vessel but doesn't aid in navigation might still be considered a crew member. So there they said yes, and that is why they added that test. If you are sailing with a vessel, don't aid in navigation, but contribute to the function of the vessel and the accomplishment of its mission, you may be a seaman. But unfortunately, a lot of plaintiffs' attorneys have taken that factor and tried to apply it to situations where the employee is not traveling with the vessel. And to do so is not only inconsistent with the law, it's inconsistent with the common sense definition of a seaman. A seaman means a sailor, somebody who travels on vessels. Mr. Doty didn't do that. So land-based ship repairmen contribute to the function of the vessel. They're not seamen. Longshoremen contribute to the function of the vessel. The function of cargo ships is to transport cargo, load and unload it. Longshoremen do that. They're not seamen. So that in and of itself is not the test. The key part of the Chandra's test is what the employee's relationship is to the vessel in terms of the nature of what the employee is doing. That's the key part. And if you're not traveling on these vessels while they're moving, you're not a seaman. And there isn't a case out there that holds otherwise. Can I ask you about that point? Is it really critical that the vessel be moving? I mean, what if the barge were in the middle of the Hudson all the time, just bobbing around, not moored to the steel spuds, and we're literally in the middle? Doesn't that expose it to the perils of the sea, the wind, the waves, the passing maritime traffic? I mean, as I recall, there was evidence in here of a couple of crashes in the middle of the Hudson where didn't five people die? So how do you, for example, how do you draw a line at whether the vessel is stationary? And I understand that may not be dispositive in anyone's view. Yeah, I think it sounds like you're saying stationary versus traveling becomes dispositive, that if the ship is not moving, you're 100% out of the game. But can that be true? Well, that's certainly what the courts have focused on when analyzing a seaman's duties. On the perils of the sea part, that's sort of another distortion of what the law is. Even the Second Circuit in Buchanan said, you need to be exposed to the perils of the sea in the manner associated with the seaman. They cited to a district court case in Kentucky, this Densing case, where the court there, in a very similar case where there was a bridge builder out on a barge in the middle of a river who made the same argument, I'm exposed to the perils of the sea. But the court there said, yes, but those are perils of the sea that harbor workers are typically exposed to. So let's be clear, land-based maritime workers, harbor workers, longshoremen, others, those who are not seaman but are covered under the Longshore and Harbor Workers Compensation Act are often exposed to the perils of the sea. The question is perils of the sea in a manner associated with seaman status. And if you look at the Densing case, they explain what that means. If we took the definition as simply being a contribution to the function of the vessel, accomplishment of its mission, and perils of the sea, then any harbor worker would likely meet that test. We'd be talking about whether it was rough water or not, but that's not the test. The test isn't the characteristics of the body of water. The test is the characteristics of the employee's employment. And if you're not traveling with a vessel, you're not a seaman. And the court in Ninth Circuit case law, Cabral, they made that exact point. Why, and I don't disagree with your characterization necessarily, but why then do we have a totality of circumstances test? You just made a very simple, really two-pronged test. Well, there may be instances where you are traveling with the vessel where you might not meet, you might not qualify for seaman status. And that's actually what Chandra stood for. Chandra was a case where the employee was actually on a voyage and was injured. And they said, well, even though he was on a voyage at the time he was injured, he didn't necessarily meet seaman status test. But the key question is, what is the nature of your relationship to that vessel? And I want to point out here. Well, can I just pause you there? Because I'd like to stick for a moment with perils of the sea. And it seemed to me you're suggesting that, say, staying in the harbor doesn't matter. Is a harbor pilot, a professional harbor pilot, a seaman? Yes. So it's not a question of whether you are in the harbor or not, or going on long voyages or not, right? I mean, that's what I don't understand. If a harbor pilot who's just puttering back and forth and back and forth within the harbor, perils of the sea, why would someone going back and forth to barges in the middle of the Hudson, for purposes of that factor alone, similarly be subject to the perils of the sea? Not that that gets you over the totality of the circumstances test, but why is that factor not satisfied? Because with harbor pilots, you're looking at the nature of what they're doing. If you look at O'Hara, the 2002 Second Circuit case, you can discuss O'Hara. They talked about certain factors that need to be analyzed to determine the nature of the job duties. Harbor pilots actually navigate vessels. They're navigating vessels traveling over water. That's the classic definition of what a seaman is. Now we're turning to the function relative to the vessel, right? And I get that you're saying that, say, for a harbor pilot, that is closely tied to sailing, right? That's what a seaman does, is you're piloting a boat. I'm trying to isolate the various factors we're talking about. And what I'm trying to ask about is the exposure to the perils of the sea. I mean, following up on Judge McDonald's, it put me in mind of, you know, the galley cook. You know, you could be, you know, serving up the hash every morning and you never see the deck and you never weigh anchor, but you are a permanent member of the crew, right? And I can see that you're getting into other questions, but would you not agree that with regard to perils of the sea, the galley cook is as exposed to those perils as the captain? Yes, but if the galley cook is actually traveling on the vessel, he is a crew member. Bear in mind here, Mr. Doty was working on barges that are moored by spuds and they are stationary. They are in place. When he's doing repair on the equipment on these barges, they're no longer acting as vessels. They have no crew. So you're saying the moored nature of them. So, and I understand that argument that when they're moored, they're safer, right? They're not going to float away or something, right? By the way, what is a steel spud? Could you just, I am curious what that term is. It's not a potato, I take it. No, it's a steel piling. So a barge has, essentially, the piling can pass through the hull of the barge to hold it in place. So a barge can kind of move up and down with the tide on the spud. So it can't move other than up and down with the tide. So it floats. But that's your argument there, that effectively, because they're moored to these pilings, as a factual matter, in this case, the barges were less exposed to the perils of the sea than, you know, a shift that's going back and forth and back and forth. But I think we're isolating one turn and making that the test. No, no, I'm not asking that to be the test. I'm just saying that if you have a multi-factor test, we do have to ask whether one factor tips one way or the other, and it may not be dispositive. But I'm trying to say, if one considers only that factor, I guess I'm not understanding your argument. If one only considers that factor, then virtually every land-based maritime worker would be And for that reason alone, you could say, yes, they're exposed to the perils of the sea, but that in and of itself has never been enough. And that is why Buchanan cited to Denson explaining what you mean by perils of the sea is what a seaman does. Seaman travels on ships. If we were talking about moored barges, fixed barges, construction workers working on those defined it that way. But that doesn't make you a seaman. That is not the test. I think Buchanan makes that very clear. I think O'Hara makes it very clear. Any other questions? If not, counsel, your time has expired. Thank you. We'll hear from Mr. Hoffman. Thank you, Judge Fuller. First of all, I wish I reserved 20 minutes to read about some of those arguments that counsel made, but I'm going to try to go through quickly. First of all, he said there are no cases out there that are similar. Well, I beg to differ. The Shuring case out of the Ninth Circuit, the Nakuin case, and the Endeavor Marine out of the Fifth Circuit. The Stewart case out of the First Circuit, coming back from the Supreme Court, where the Supreme Court ruled that the Super Scoop, which was digging the tunnel across the Boston Harbor, it was not moving other than maybe 50 feet at a time every two or three hours. Vessel motion is not part of the test. The Supreme Court specifically said so in the Papai decision that voyage is no Osdavenas, which is, again, another case that counsel runs away from. Mr. Osdavena did the same sort of work as Mr. Doty, changing air filters, putting oil into the machinery while that construction project for the Staten Island Naval Yard was going on. Those vessels aren't traveling back and forth, which is what he's trying to convince you is what a seaman does. But this found as a matter of law in Osdavenas that Mr. Osdavenas was a seaman, rejected that he was a longshoreman. Why? Because he was contributing to the function of that vessel and its appurtenances, the same thing as Mr. Doty did. What counsel wants you to do is to reject the Wielander decision, which got rid of the aid to navigation test, and ultimately in Chandra's, we had the multi-factors that have been pointed out here. And I think the most important case is the Giazzone case, where Mr. Giazzone was standing on the platform, looking at the vessel to be repaired, and he slipped and fell or his foot went through a piece of material. And the Supreme Court said, is he a seaman is a question ultimately for a jury. And if you look at the Stewart decision that came out of the Supreme Court, your honor, the Stewart that dredge was moving hardly anywhere, but it had a big crane type of device, just like the strong island here. And it had to be moved to move along to do its dredging, just like the strong island had to be moved. So this vessel was moving at times, whether or not it was moving while Mr. Doty was making it capable of moving is not the question. The point is, he was on the vessel for 90% of his time. And the last point that counsel also keeps ignoring, and as did the district court, Mr. Doty, just like Mr. Giazzone, had to take his tools and materials. And at page 72 of his deposition, he testifies, he said, well, you had to be a pretty agile guy. I'll tell you, you had to be able to carry, I don't know, 60 or 70 pounds, because everything you did, everything you carry, tools and materials on that work boat, when you got to your destination, you carry your tools and materials off the boat onto a barge, sometimes across two or three barges to get to the one you wanted to. So what we have here is transportation function of which he participated in, of his tools and material, seven times a day, over a half hour, 12, 16% of his day, transporting tools and material, that's his part of his job. And then once he got to the barge, he contributed to the function. So I think that the totality of the circumstance is completely different from what Mr. Volk was doing in Buchanan, where he was loading barges with rock, walking off the barge that was tied up securely to the pier, and could protect himself. And some of these issues that are pointed out in some of the cases, oh, well, if you're out, if you can walk off the vessel, when there's danger, well, maybe that's not a seaman. But certainly Mr. Doty, where he was, couldn't just walk off the vessel. And he had to, he was on the vessel in the middle of the river, and subject to certainly the perils of the sea. So with that, Your Honor, I think my briefs and this argument clearly point that this court should find that he was a seaman. But if not, at least he should be considered to be, it's a jury question. And we didn't get to the point that if you rule that he wasn't a seaman, I point out and just to sum it up, in my reply, we talked about something else that the lower court said, well, the condition that Mr. Doty was involved in was open and obvious. And I want to point out, it's clear that the concept of being an open and obvious condition is merely a factor that goes to comparative negligence. It does not preclude a longshore worker, if that's what he ultimately is, from being able to bring a 905B case. I thank you for... Thank you both. Thank you, counsel. Thank you both for a reserved decision. Very nice argument.